DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SHAILIKA S. KOTIYA (CABN 308758)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-443
    FAX: (415) 436-7234
    shailika.kotiya@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 16-0178 CRB |
| Plaintiff, | UNITED STATES'S OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE FROM CUSTODY |
| v. | |
| MICHAEL GERARD TRENT, | |
| Defendant. | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

Defendant, Michael Gerard Trent, is currently serving a 54-month sentence, with an anticipated release date of December 14, 2020. He seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. No. 105. The government opposes Defendant's motion because, first, Defendant waived such a post-conviction attack in his plea agreement, and second, Defendant has not exhausted his administrative remedy before seeking such relief. Importantly, the Bureau of Prisons does not have a record of Defendant submitting a request for a sentence reduction within the meaning of Section 3582 and the implementing regulation, and Defendant's counsel has not provided proof of such a request. Therefore, this Court should deny Defendant's motion.

## ARGUMENT

### I. DEFENDANT'S PLEA AGREEMENT BARS A MOTION FOR A SENTENCING REDUCTION UNDER 18 U.S.C. § 3582

Defendant seeks early release under 18 U.S.C. § 3582(c)(1)(A). However, Defendant expressly waived the right to file any motion attacking his sentence and waived the right to seek any relief under 18 U.S.C. § 3582 in paragraph 5 of his knowing and voluntary plea agreement.

A waiver of rights under § 3582 "is enforceable if (1) the language of the waiver encompasses the relief sought, and (2) the waiver is knowingly and voluntarily made." *United States v. Malone*, 503 F. App'x 499, 500 (9th Cir. 2012) (unpublished) (citing *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009)). In *Malone*, the Ninth Circuit reversed a district court order granting a § 3582 sentence reduction where the defendant waived the right to seek § 3582 relief in his plea agreement. *Id*. The Ninth Circuit has similarly upheld analogous waivers in plea agreements where the language is unrestricted and the waiver was knowing and voluntary because "[t]he record shows that the government upheld its end of the deal[]" and thus "[t]he United States is entitled to the benefit of its bargain." *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005). Courts in this district have enforced § 3582 waivers in plea agreements. *See United States v. Eidson*, 2019 WL 3767570, at *2 (N.D. Cal. Aug. 9, 2019) (relying on identical plea agreement waiver of § 3582 relief); *United States v. Quinones*, 2017 WL 2929452, at *2 (N.D. Cal. Jul. 10, 2017) (quoting and relying on *Malone*).

Here, the language of the waiver in Defendant's plea agreement squarely prohibits him from seeking relief under § 3582. Defendant makes no argument that his waiver was not knowingly and voluntarily made. Nor is there anything in the record that would excuse him from this waiver, such as "claims involving breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty." *Malone*, 503 F. App'x at 500. Defendant's plea agreement waiver of the right to seek § 3582 relief should be enforced. His motion should be denied on the ground of waiver alone.

## II. THIS COURT PRESENTLY LACKS JURISDICTION TO MODIFY DEFENDANT'S SENTENCE

This Court lacks authority to act on Defendant's motion at this time because he has not exhausted his administrative rights, as required under 18 U.S.C. § 3582(c)(1)(A).

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). As the Supreme Court has recognized, finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, it is well established that once a district court has pronounced sentence and the sentence becomes final, the court has no inherent authority to reconsider or alter that sentence. Rather, it may do so only pursuant to statutory authorization. *See, e.g.*, *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979); *United States v. Washington*, 549 F.3d 905, 917 (3d Cir. 2008); *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization.") (internal quotation marks omitted).

18 U.S.C. § 3582(c) provides three narrow exceptions to the rule of finality, only the first of which is relevant here. 18 U.S.C. § 3582(c)(1)–(2); *see also United States v. Sumner*, 210 F. Supp. 3d 21, 22–23 (D.D.C. 2016) (denying defendant's motion to reduce sentence where he did not meet any of the three exceptions provided in § 3582(c)). 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part that the court "may not modify a term of

imprisonment once it has been imposed except" upon a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," where such a reduction also meets other specified requirements. 18 U.S.C. § 3582(1)(A).

Unless Defendant meets these administrative exhaustion requirements, this Court lacks jurisdiction to modify Defendant's sentence. Section 3582(c) states that a "court may not modify" a term of imprisonment except in enumerated circumstances. It thus "speak[s] to the power of the court rather than to the rights or obligations of the parties," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (citation omitted), delineating "when, and under what conditions," a court may exercise its "'adjudicatory authority,'" *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007) (quoting *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam)). Indeed, the Ninth Circuit has held that a defendant's failure to meet the requirements of 18 U.S.C. § 3582(c)(2) means that the district court lacks jurisdiction to reduce the defendant's sentence. *United States v. Buenrostro*, 895 F.3d 1160, 1164 (9th Cir. 2018); *United States v. Davis*, 825 F.3d 1014, 1019–20 (9th Cir. 2016) (en banc).

Even if the exhaustion requirement of Section 3582(c)(1)(A) were not jurisdictional, it is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart*, 546 U.S. at 19 (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a nonjurisdictional but mandatory claim-processing rule). "'Where Congress specifically mandates' it, exhaustion is not merely appropriate but 'required.'" *Barron v. Ashcroft*, 358 F.3d 674, 677 (9th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *see also United States v. Holden*, No. 3:13-CR-00444-BR, 2020 WL 1673440, at *6–10 (D. Or. Apr. 6, 2020) (providing a detailed analysis why statutory exhaustion requirements such as here are mandatory, even in the midst of the COVID-19 crisis, and distinguishing contrary district court cases). The government raises the rule here, and it must be enforced.

The BOP regulation, 28 C.F.R. § 571.61, implementing Section 3582(c)(1)(A) provides in relevant part:

§ 571.61 Initiation of request – extraordinary or compelling circumstances.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

3

> a. A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:
>
> (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
>
> (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61. In addition, BOP's Program Statement setting forth procedures for implementing Section 3582 states: "A request for a RIS is considered 'submitted' for the purposes of 18 U.S.C. § 3582(c)(1), when received by the Warden in accordance with this section." See https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Here, Defendant has not shown that he that has filed an administrative motion with the warden. In fact, on March 26, 2020, Defendant wrote to the Court and stated: "I should be able to go to home detention but I need your help in receiving it. Would you please help me acquire home confinement." Dkt. 102. Importantly, a defendant's request to the warden for home confinement does not trigger the start of the 30-day window for exhaustion purposes under Section 3582(c)(1)(A). *See Holden*, 2020 WL 1673440, at *4–5. In his declaration, counsel for Defendant represents that he spoke with Defendant on April 7, 2020, and Defendant stated that he submitted a request for compassionate release on February 28, 2020, and that Defendant did not receive a response. Dkt. 105-1 at ¶ 2(a). Counsel for the defense did not attach a copy of the referenced request. On April 9, 2020, the undersigned AUSA received confirmation form the Bureau of Prisons that the system they utilize for filing and tracking compassionate release requests produced negative results as to any filing by Defendant. *See* Kotiya Declaration, attached hereto. Based on this information, Defendant has failed to exhaust his administrative remedies.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

4

The COVID-19 pandemic, while presenting urgent and serious concerns, does not allow this Court to circumvent the statute's administrative requirements. As the Third Circuit recently emphasized: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 3, 2020) (denying motion for compassionate release and refusing to remand to district court because any remand would be futile since defendant did not exhaust his administrative remedies). Numerous other courts have also recognized that COVID-19 does not excuse the administrative requirements of 18 U.S.C. § 3582(c)(1)(A). *United States v. Shah*, No. 10-70-CJC, ECF No. 329, at 3 (C.D. Cal. Mar. 30, 2020) ("Because defendant failed to exhaust his administrative remedies, his request for compassionate release based on COVID-19 concerns fails."); *United States v. Sloane*, No. 19-CR-10117-IT-11, ECF No. 647, at 2 (D. Mass. Mar. 19, 2020) (noting no request made to the USP Lompoc Warden, and that absent such exhaustion, the court "does not have authority to grant the requested relief"); *United States v. Gileno*, No. 19-CR-161-VAB-1, 2020 WL 1307108, at *3–4 (D. Conn. Mar. 19, 2020) (denying COVID-19-based compassionate-release motion for lack of exhaustion); *United States v. Eberhart*, No. 13-CR-00313 PJH, Dkt. 64, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (same); *United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 29 (N.D. Cal. Mar. 24, 2020) (same); *United States v. Neman*, No. 14-521-JAK, ECF No. 863, at 4—6 (C.D. Cal. Mar. 30, 2020) (same). Although "it is indisputable that the COVID-19 outbreak is unprecedented and poses a heightened risk to those in this nation's prisons and jails, [] absent congressional action to relieve inmates of the exhaustion requirement [of Section 3592(c)(1)(A), this Court] is unable to provide the relief Defendant seeks." *Holden*, 2020 WL 1673440, at *10; *see United States v. Carver*, No. 4:19-CR-06044-SMJ, 2020 WL 1604968, at *1 (E.D. Wash. Apr. 1, 2020).

While *judicially*-created exhaustion requirements may sometimes be excused by judge-created exceptions, it is well settled that a court may not ignore a *statutory* command such as that presented in Section 3582(c)(1)(A). *Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("[T]the Supreme Court has made clear that if exhaustion 'is a statutorily specified prerequisite'—as opposed to

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

5

a judicially created one—'[t]he requirement is . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility[.]'" (quoting *Weinberger v. Salfi*, 422 U.S. 749, 755 (1975)).

The Supreme Court reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which the Court rejected a judicially created "special circumstances" exception to the exhaustion requirement stated in the Prison Litigation Reform Act of 1995 (PLRA). That Act mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856. The Court stated:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. *See McKart v. United States*, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Id.* at 1857.

Not only does giving the BOP a first chance to evaluate any motion for early release under Section 3582(c)(1)(A) required, it is good policy. The Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. As the Procedures reflect, BOP completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement. BOP is better situated[1] than the courts to

---

[1] Until the First Step Act's recent enactment, the BOP had exclusive authority to adjudicate such claims. Notably, the First Step Act did not change the factors relevant to whether and how the Court should modify a defendant's sentence, only the procedures by which a defendant can raise such claims.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

6

make an initial evaluation of defendants' requests for early release for it maintains defendants' relevant medical and behavioral records, and has expertise in assessing the safety and health of their inmates and managing the administration of their facilities. The BOP also has a variety of administrative procedures available for addressing COVID-19-based concern.

Unfortunately and inevitably, just as many in the general populace have contracted COVID-19, some BOP inmates have become ill and more will likely become ill in the weeks ahead. But the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

In addition, BOP has been granted wider authority to designate inmates for home confinement in its toolkit of available measures. Indeed, BOP has taken rapid steps to increase the number of inmates placed on home confinement. This effort involves the assessment of inmates for vulnerabilities to COVID-19 according to CDC Guidelines and determination of suitability. As of April 5, 2020, BOP had increased home confinement by over 40% since March and continued to "aggressively screen all potential inmates" for eligibility, without any need by the inmate to apply for consideration—"all inmates" were being "urgently review[ed]" for home confinement. *See* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp.

---

United States v. Ebbers, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

7

For all of these reasons, BOP is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The Court should only become involved in an appellate posture or if BOP cannot review a request in 30 days. Indeed, for this Court to evaluate a defendant's medical reasons for release, this Court should review the BOP's medical records for that defendant. Exhaustion cannot—but also should not—be excused. *Eberhart*, 2020 WL 1450745, at *2 (declining to excuse failure to exhaust COVID-19 compassionate-release motion); *Neman*, No. 14-521-JAK, ECF No. 863, at 6 (same). The Court should thus dismiss Defendant's motion for lack of jurisdiction. At minimum, the Court should stay consideration of the motion until the BOP has completed its administrative review.

### III. BOP HAS EXCLUSIVE AUTHORITY TO TRANSFER AN INMATE TO HIS OR HER HOME FOR THE REMAINDER OF HIS OR HER SENTENCE OF IMPRISONMENT

The Bureau of Prisons is authorized to assign a prisoner to a community correctional facility during the last twelve months of his custodial sentence, and to place a prisoner in home confinement for the shorter of 10 percent of his term of imprisonment or 6 months. 18 U.S.C. § 3624(c)(1) & (2). The Attorney General has directed the Director of the BOP to prioritize granting home confinement to eligible inmates who are especially vulnerable to COVID-19 based on their age and underlying health conditions, where home confinement would be more effective in protecting their health, and not present a great risk to public safety. Att'y Gen. Memo. (Mar. 26, 2020). The Attorney General has also invoked his emergency authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281, § 12003(b)(2) (March 27, 2020). BOP is evaluating all inmates for placement in home confinement, with priority given to those most vulnerable to COVID-19 and those at facilities most affected by COVID-19. Att'y Gen. Memo. (April 3, 2020). BOP has increased home confinement by over 40% since March. *See* https://www.bop.gov/resources/news/ 20200405_covid19_home_confinement.jsp (last accessed April 6, 2020).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

8

To the extent that Defendant asks the Court to simply re-designate him to serve the rest of his sentence in home confinement, this Court lacks the authority to do so. This Court may make a non-binding recommendation as to home confinement, but BOP's designation decision "is not reviewable by any court." 18 U.S.C. §§ 3621(b) & 3624(c); *see Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs]."); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("The Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) ("Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions.").

## CONCLUSION

Defendant entered into a plea agreement barring him from seeking relief under 18 U.S.C. § 3582 and did not exhaust all administrative remedies before filing this motion. This Court should therefore deny Defendant's motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i).

DATED: April 9, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

\_\_\_/s/_____
SHAILIKA S. KOTIYA
Assistant United States Attorney

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY

9